## JEFF (A SLAVE) *v.* STATE, 39 Miss. R., 593.

### ASSAULT WITH INTENT TO KILL.

The law presumes that a person intends to do not only what he accomplishes, but also the natural and probable consequences of every act done by him. But this presumption only amounts to *prima facie* and not to conclusive proof of such intention. The jury should be left free to consider whether the testimony offered by

the accused to rebut this legal presumption, or otherwise submitted to them on the part of the state, satisfied their minds of the absence of such intention. Jeff v. State, 37 Miss., 321.

In considering technical attempts to commit crime, the jury may take into considera-. tion the nature of the act done, and the attendant circumstances, as matter of evidence to determine the particular intent with which it was performed; they may infer the specific intent to do a particular thing, which is the necessary or even probable consequence of the act proven to have been done.

Proof of the use of a deadly weapon in an assault and battery by one person upon another is *prima facie* evidence of an intent to kill, which must prevail unless rebutted by other proof in the cause.

The law presumes every person to be innocent until the contrary is proved. But when an *unlawful* act is proven, the presumption of innocence is rebutted, and the law presumes such *unlawful* act to have been *criminally intended,* unless the contrary is made to appear. 1 Greenl. Ev., 42, 43, § 34.

Error to Panola circuit court. THOMPSON, J.

The plaintiff in error, Jeff, a slave, was indicted for an assault and battery on one John Ballantine, his master, with intent to kill and murder. Upon a former trial he was convicted, and upon a writ of error to this court the judgment was reversed and remanded. He was again arraigned in the court below for trial on the plea of not guilty.

The evidence on both trials was the same, which will be found fully set forth in a report of the first case, 37 Miss., 321.

For the state, the court instructed the jury as follows:

1. If any slave shall commit an assault upon any white person, with intent to kill, upon express malice, and not in necessary self-defense, every such slave may be indicted therefor, and on conviction shall suffer death; but no proof of express malice shall be required to make such assault capital, when the assault with intent to kill is committed by a slave on his master, mistress, overseer, or employer, in resistance of legal chastisement.

2. That malice is implied by law from the nature and character of the weapon used; and if the jury believe from the evidence that the master of the slave Jeff was about to inflict legal chastisement, and that Jeff resisted that legal chastisement, and made an assault upon his master with a deadly weapon, that this is *prima facie* evidence that he intended to kill his master, and the jury will find him guilty as charged, unless, from the whole proof in the cause, they are satisfied that he did not intend to kill.

3. That a slave is bound to submit to the chastisement of his

master, overseer, or employer, and that he has no right to use a deadly weapon to cut himself loose from the whipping; and if the jury believe from the evidence that the defendant's chief desire was only to get away and avoid a whipping, yet if they believe that he used a deadly weapon to enable him to get loose, and cut his master with it, and it was the natural or even probable consequence of his act to produce the death of his master, then they will find him guilty as charged, unless they are satisfied from the whole evidence that he did not intend to kill.

4. That if the state has proved that the defendant resisted the legal chastisement of his master, and in such resistance cut his master with a deadly weapon, then the law presumes that he intended to kill, and the defendant must prove that he did not intend to kill his master, unless that proof arises out of the evidence against him; and it is immaterial whether he prepared himself with a deadly weapon, or whether he habitually carried the same.

5. That it is true that the state must prove that the defendant did intend to kill his master, but that we can only judge of the intentions of another from his admissions or overt acts, and the law presumes every person to intend to do that which is the natural or even probable consequences of his acts.

6. That when a *prima facie* case has been made out against the defendant, the jury are bound to act on that *prima facie* case, as much as if it were conclusive, unless it is rebutted and overcome by the whole proof in the cause.

7. That the defendant is entitled to the benefit of every reasonable doubt, but that absolute metaphysical and demonstrative certainty is never required, and that which amounts to mere probability or supposition is not what is meant by a reasonable doubt.

The following instructions were among those asked by the defendant:

3. "That in this case the defendant ought not to be found guilty as charged, unless his intent in fact was the same as laid down in the indictment;" which was modified by the court as follows: "This intent may be proven by the presumption of law that a man is presumed to intend to do that which is the natural

consequence of his act deliberately done; but that such presumption of law may be met and rebutted by proof introduced by the defendant, or by the facts given in evidence against the defendant by the state."

The prisoner excepted to the instructions given in behalf and to the modification of the third instruction for the defendant.

The jury returned a verdict of guilty; and upon his motion for a new trial being overruled, the prisoner sued out this writ of error, and assigns for cause of reversal the following errors:

1. The court below erroneously charged the jury on the motion of the state.

2. The court erred in modifying defendant's third charge.

3. The verdict is contrary to the law and the evidence.

*J. W. C. Watson*, for plaintiff in error.

The intent of the defendant in making the assault was a question of fact for the jury. The law raises no presumption about it. State v. Stewart, 29 Miss., 419. The jury could not legally convict, unless satisfied from the whole evidence that the defendant had in his mind a positive intention to kill; and it is not sufficient that it would have been murder had death ensued. Regina v. Cruse, 34 Eng. C. L. R., 522; State v. Bill, 3 Harrington, 571; Bishop Cr. Law, 514.

The *particular intent* is essential to constitute the felony. The class to which this case belongs is clearly distinguished from that class in which a general felonious intent is sufficient to constitute the offense. The doctrine of an intent in law, different from the intent in fact, although applicable to the latter class, is not applicable to the former. 3 Harrington, 571; Ogletree v. State, 28 Ala., 693, 701; Jeff v. State, 37 Miss., 321. Admitting the fact that the weapon used was calculated to produce death, and it by no means follows that the offense is made out; for with such a weapon a very harmless assault may be made, and one without the slightest intention of taking life. Seitz v. State, 23 Ala., 43; Henry v. Patrick, 1 Dev. & Batt., 358.

The third charge is in flagrant violation of the well-settled principles of law applicable to the case, since it makes an assault with intent merely to escape a whipping equivalent to an as-

sault with intent to kill. Where facts connected with the transaction show a motive, an immediate cause for the act done, the law assigns the deed to that motive, the effect to its immediate cause, and will not legally admit that it was the consequence of any preconceived purpose. State v. Will, 1 Dev. & Bát., 164.

The defendant introduced no testimony, but relied for his defense on that offered by the state. The principle may be broadly stated, that when the defendant relies on no separate, distinct, and independent fact, but confines his defense to the original transaction on which the charge is founded, with its accompanying circumstances, the burden of proof continues throughout with the prosecution. Wharton Am. Cr. Law, 264, 265; Payne v. Commonwealth, 1 Metc., 375.

In all criminal cases whatsoever, it is essential to a verdict of condemnation that the guilt of the accused should be fully proved; no mere preponderance of evidence, nor any weight of preponderant evidence, is sufficient for the purpose, unless it generates full belief of the fact to the exclusion of all reasonable doubt. 1 Starkie Ev., 543.

The proof shows no act by the defendant, "the natural or even probable consequences of which" would have been the death of his master. 29 Miss., 49; 28 Ala., 693; 3 Harrington, 571; 23 Ala., 43; 1 Metc., 375; Dev. & Batt., 358.

*T. J. Wharton*, attorney general,

Argued the case orally, and filed an elaborate brief, reviewing all the evidence in the case, and the points made by the counsel for plaintiff in error. He cited and relied on the following authorities: 22 Ala., 23; 9 Yerg., 343; 13 S. & M., 264; 15 Ga. R., 535.

HARRIS, J.:

The main points presented in this cause were fully considered and determined by this court when the case was here before. They were then carefully examined, and the result of the examination of the various authorities briefly stated. The case was then reversed, because the court had instructed the jury that if the plaintiff in error "made an assault and battery upon his

master or employer with a deadly weapon, and not in necessary self-defense, then they will find him guilty as charged;" thereby excluding the *intent as a question of fact* from the consideration of the jury.

It is there said, that "in *presumption of law*, the plaintiff in error, in the absence of proof to the contrary, will be held to have intended the natural and probable consequences of every act deliberately done by him. But this presumption only amounts to *prima facie*, and not conclusive proof of such intention. The jury should have been left free to consider whether the testimony offered by the accused to rebut this *legal presumption*, or otherwise submitted to them on the part of the state, satisfied their minds of the absence of such intention." Jeff v. The State, 37 Miss. R., 321.

The same principles asserted in the opinion just cited, were presented to the jury in several charges given by the court at the instance of the state, and also in a modification of one of the defendant's instructions on the last trial; and these are the grounds of error assigned for reversal now.

The cause has been again argued before us with distinguished zeal and ability, and upon the supposition that the principle asserted in our previous opinion is in harmony with the rules now contended for by counsel for the accused.

In this we think that counsel are wholly mistaken. But as mere pride of *consistency*—especially in adhering to error—is no part of the meed we covet in our judicial labors, we have given full consideration to the arguments and authorities relied on to establish the conclusion contended for, without reference to our former opinion.

That there are some precedents to be found in the books where the principle is asserted that the intent of the defendant in making the assault is a question of fact for the jury, *and that the law raises no presumption about it* in cases of this description, should not be matter of surprise, considering their great number and variety, as well as the labor-saving facility with which precedents are sometimes made.

Looking back to the doctrines of *presumptive evidence, and the reason on which they rest*, as stated by the elementary

writers, the question at issue will be relieved of most, if not all difficulty or obscurity.

The law does not always require the production of *direct or positive proof* of the existence of acts, facts, or intents, upon which to base its judgments. Deriving its principles often from human experience of human *motive and conduct*, it infers, or presumes sometimes, the existence of one from proof of the other. Indeed the elementary writers on the law of evidence abound with illustrations of *legal presumption*, which are even *conclusive and indisputable*, founded on this philosophy of human experience, as to the intimate connection between human *motive* and human *conduct*. The rule of law, in such cases, is not always a rule of inference from testimony alone, but sometimes a rule of protection, as expedient for the general good. These general doctrines of presumptive evidence are not peculiar to the municipal law, but are shared by it in common with other departments of science. Thus the presumption of a malicious intention to kill, from the deliberate use of a deadly weapon, and the presumption of aquatic habits in an animal found with webbed feet, belong to the same philosophy, differing only in the instance, and not in the principle of its application. The one fact being proved, the other, its uniform concomitant, is universally and safely *presumed.* It is this "*uniformly experienced connection*" which leads to its recognition by the law without other proof; the presumptions having more or less force in proportion to the universality of the experience. Hence the doctrine of *conclusive* and *disputable*, or *prima facie*, presumptions. See 1 Greenleaf Ev., p. 20, § 14.

. Of this latter class (disputable or *prima facie* presumptions of law) is the general presumption of innocence. As men do not *generally* violate the penal code, the law presumes every man *innocent*, until the contrary is proven. So, on the other hand, as men seldom do *unlawful* acts with innocent intentions, when an *unlawful* act is proven the presumption of innocence is rebutted, and the law presumes such *unlawful* act to have been *criminally intended*, until the contrary is made to appear. 1 Greenleaf Ev., pp. 42, 43, § 34.

In the third volume of his work on evidence, Mr. Greenleaf,

at p. 17, § 13, further illustrates these views.   He says: "Another cardinal doctrine of criminal law, founded in natural justice, is, that it is the *intention* with which an act was done, that constitutes its criminality.   The intent and the act must both concur to constitute the crime; and the intent must therefore be proved, as well as the other material facts in the indictment.   The proof may be either by evidence, direct or indirect, tending to establish the fact; *or by inference of law from other facts proved.*   For, though it is a maxim of law, as well as the dictate of charity, that every person is to be presumed innocent until he is proved to be guilty, yet it is a rule equally sound, that every sane person must be supposed to intend that which is the ordinary and natural consequence of his purposed act.   Therefore, when an act, *in itself indifferent*, becomes criminal, if done with a particular intent, there the *intent* must be proved and found; but when the act is *in itself unlawful*, the proof of justification or excuse lies on the defendant, and in failure thereof, *the law implies a criminal intent*."   And this is the very language employed by Lord Mansfield in Rex v. Woodfall, 5 Burr., 2667, on an information for printing and publishing in the "Public Advertiser," a seditious libel, signed *Junius*, decided in 1770.

So, in the case of Rex v. Farrington, 1 Eng. Crown Cases (Russ. & Ry.), 207, the prisoner was indicted for setting fire to a mill, with *intent* to injure the occupiers thereof; and it was held by all of the twelve judges present, that an injury to the mill, being the necessary consequence of setting fire to it, the *intent to injure* might be inferred; for a man must be supposed to intend the necessary consequences of his own act.   See also, Rex v. Cox, id., 362.

In Duffie's case, id., 364, this question did not arise.   There the jury expressly negatived the intent laid in the indictment, and found him guilty of the act charged, but with a different intent from that laid in the indictment.   As, however, the intent found by the jury was embraced in the prohibition of the statute upon which the indictment was founded, though not included in the indictment, the crown officer insisted that the conviction was right and sentence should be pronounced, and

this was the question reserved for the opinion of the twelve judges, who held that the conviction could not be supported.

The case of Rex v. Boyce, 2 Eng. Crown Cases (Moody), 29, is a case of the same kind, where the jury expressly negative the intent laid in the indictment, but find him guilty of another intent, and the judges on the point reserved held the conviction wrong.

The case of Rex v. Gillon, id., 85, only decides, that where *two intents* existed, it was immaterial which was the principal intent and which the subordinate one; and, therefore, where one only was charged, and the jury found *that* intent as existing, but only as secondary to another *principal* intent not laid in the indictment, the conviction was held proper.

The case of Rex v. Hunt, id., 93, was an indictment for maliciously cutting. The intent charged in the first three counts, was to prevent apprehension; in the fourth, to do the prosecutor some grievous bodily harm. The jury found the prisoner guilty, and stated, that the thrust was made with intent to do some grievous bodily harm upon anybody upon whom it might alight, though the *particular cut* proved was not calculated to do so. The court held, that malice against the individual cut is not essential; that general malice is sufficient; that the *intent* to do grievous bodily harm is sufficient, though the cut is slight, and not in a vital part; that the question in such case is, not what the wound *is*, but what wound was intended.

The case of Regina v. Cruse and wife, reported in 8 Carr. & Payne, 541, and cited by counsel from a mere syllabus contained in the 34th volume of English Common Law Reports, is not in conflict, so far as we can learn from the book referred to, with the general doctrine above stated. It only decides, that "on an indictment under the statute, 1 Vict., ch. 85, § 2, for the capital offense of inflicting an injury dangerous to life, with intent to murder, the jury ought not to convict, unless they are satisfied that the prisoner had in his mind a positive intention to murder; and it is not sufficient, that it would have been murder if death had ensued."

From the review of this case, contained in the last edition of

Mr. Wharton's Treatise on American Criminal Law, it is evident the question we are now considering did not arise in the case of Cruse and wife, above cited. The author, in treating of "*intoxication as a defense*," and its effect upon the question of *intent*, cites this case as follows: "So, again, where the charge was assault with intent to murder, Patterson, J., said, 'A person may be so drunk as to be utterly unable to form any intention at all, and yet he may be guilty of very great violence. If you are not satisfied that the prisoners, or either of them, had formed a positive intention of murdering the child, you may find them guilty of an assault.'" Wharton's Am. Crim. Law, 4th rev. ed., § 42; and see also his reference to the same case in § 120, further showing that it cannot be relied on as an authority for the position assumed in this cause by counsel for defense.

Mr. Russell, in treating of this same subject, refers to the same case in a note, and quotes Patterson, J., as follows: "Although drunkenness is no excuse in any crime whatever, it is often of very great importance in cases where it is a question of intention. A person may be so drunk as to be utterly unable to form any intention, and yet he may be guilty of very great violence."

See also 1 Bishop's Crim. Law, § 248 (end of section), and note 2, referring to the case, as not affecting the general rule stated by him, that "the law presumes that every person intends to do what he does, and intends the natural, necessary, and even probable consequences of his act." See again same author, § 269, and 299–301, treating of drunkenness as connected with *intention*, and also see § 514, and 3 Greenleaf Ev., §§ 6 and 7, as to this case. Not having the full report of the case at our command, we have been thus particular in observing its citations, for the reason that great reliance is placed upon it as an authority in this case, and it is also the foundation of the misconceptions of the judges in cases which are cited and relied on from some of the American courts, which we shall hereafter have occasion to notice.

In Rex v. Philip, 1 Moody Crown Cases, 263, it was resolved by the judges that burning of a ship, of which the defendant

was a part owner, voluntarily, was a wilful act, tending to destruction of the property of others, and that it was a necessary inference of law that *he intended* to injure them.

In Regina v. Hill, 8 Carr. & Payne, 274; 34 Eng. C. L. R., 388, before Mr. Baron Alderson, he is reported, in summing up, to have said: " There are two questions of fact, which I shall leave to you : first, did the prisoner utter this bill to Mr. Minor as a true bill, and meaning that he should take it as such ? And, second, when he did so, did he know it to be forged ? If you think that he did, you ought to find, *as a necessary consequence of law*, that he *meant* to defraud. I say, that you ought to *infer* it, if you are satisfied on the other two points. A man must be taken to intend the consequences of his own acts, and must intend to defraud if he pay another a false note instead of a real one."

Rex v. Dixon, 3 M. & S., 11, is a strong case in favor of the position that *the law* will infer or presume criminal intent from the doing an unlawful act. And to the same point is the case of Rex v. Woodburne et al., 16 Howell State Trials, 54, where the *intent* to maim was held to be a presumption of law from the acts proved.

It will be seen from the cases cited, that this doctrine is not peculiar to the law of homicide, but prevails in all the departments of criminal law.

Having noticed some of the principal English cases relating to the point under examination, we will now advert to some of their elementary writers.

In Foster's Crown Law, 255, the rule is thus stated in his introduction to his discourse on homicide : " In every charge of murder, *the fact of killing being first proved*, all the circumstances of accident, necessity, or infirmity are to be satisfactorily proved by the prisoner, unless they arise out of the evidence against him ; for *the law* presumeth the fact to have been founded in malice, until the contrary appeareth." See also p. 290, to the same effect. Lord Hale, in his Pleas of the Crown, p. 455, says : " When one voluntarily kills another, *the law* presumes it to be malicious, and that he is *hostes humani generis.*" Mr. Blackstone, in the 4th volume of his Commentaries, says

"that all homicide is malicious, and, of course, amounts to murder, unless when justified, excused, or alleviated into manslaughter; and all these circumstances of justification, excuse, or alleviation, *it is incumbent upon the prisoner to make out* to the satisfaction of the court and jury."

Mr. Hawkins, vol. 1, ch. 31, § 32, and Mr. East, vol. 1, 224, 340, state the rule substantially in the same way.

Mr. Russell, in vol. 2, pp. 730, 731 (7th Am. ed.), treating of the law of presumptive evidence, says: "Besides the presumptions which a jury may make from circumstantial evidence, there are also *presumptions of law*. Thus, on every charge of murder, the fact of killing being first proved, *the law* presumes it to have been founded on malice till the contrary appear; and therefore all circumstances alleged by way of justification, excuse, or alleviation, must be proved by the prisoner, unless they arise out of the evidence produced against him. Indeed," says he, "it is a universal principle, as Lord Ellenborough observed in the case of Rex v. Dixon, 3 M. & S., 15, that when a man is charged with doing an act, of which the probable consequences may be highly injurious, *the intention is an inference of law*, resulting from the doing the act;" and the same principle is stated on pp. 544, 545, id., and p. 362.

From the examination we have been able to make, we think it may be safely affirmed as the settled doctrine of the English law, with scarcely a respectable authority to the contrary, from the days of Lord Coke to the present time, "that a party is presumed to intend the natural or even probable consequences of his act," as an inference of law, subject to be rebutted by any evidence to the contrary in the cause.

Before proceeding to examine the cases referred to as establishing a different rule in this country, we will refer to the case of The Com. v. York, decided by Chief Justice Shaw, in 9 Metcalf, 93, as affording a most careful, able, and luminous discussion of the whole subject, and sanctioning the view we have taken of this case. It is true this was a case of murder; but Chief Justice Shaw, in his elaborate and learned judgment, discusses the general question, defines what is meant by malice in a legal sense, or malice in law, as contradistinguished from mal-

ice in fact. He says: "A sane man, a voluntary agent, acting upon motives, must be presumed to contemplate and intend the necessary, natural, and probable consequences of his own acts. If, therefore, one voluntarily or wilfully does *an act* which has a direct tendency to destroy another's life, the natural and necessary conclusion from the act is that he intended so to destroy such person's life. ` * * * So, where a dangerous and deadly weapon is used with violence upon the person of another, as this has a direct tendency to destroy life, or do some great bodily harm to the person assailed, the *intention* to take life, or do him some great bodily harm, is a necessary conclusion from the act." 9 Metcalf, 103. After citing authorities in support of these positions, he says: "These instances, taken from cases having *no analogy to the crime of homicide*, are adduced to show that the presumption of malice, from a wrongful and injurious act, wilfully done, when applied to homicide, is not technical or artificial, or invented for this particular occasion, but is the result of a mode of legal reasoning, which is of *general application*." Id., 105. And on page 107, he adds *other* authorities " to show that the inference of malice from unlawful acts is not an artificial rule of law, but a natural inference, legitimately deduced from facts admitted or proved; and that it is not peculiar to the law of homicide, but prevails in all other departments of the criminal law."

. To this effect, see Wharton's Am. Crim. Law, §§ 1172, 1173, 712, and numerous English and American cases cited. State v. Girkin, 1 Iredell, 121; State v. Green, 7 id., 39; Com. v. Webster, 5 Cush, 305.

The first case cited by counsel for the accused is the case of The State v. Stewart, 29 Mo. R., 421. In this opinion, not occupying twenty lines, without an authority cited, either by the counsel for defendant or the court, for the position, and without one word of explanation, the court says: " The intent of the defendant in making the assault was a question of fact for the jury. *The law raised no presumption about it,* and it was error for the court to tell the jury that the law presumes that every man intends the natural, necessary, and probable consequences of his acts." The facts of the case are

not given, and we are not, therefore, prepared to understand or appreciate the case as an authoritative precedent for our guidance.

The next authority relied on is Rex v. Cruse and Wife, 34 Eng. C. L. R., 522. We have already seen that this case does not touch the point now before us. It was a question whether the defendants, *in their intoxicated condition*, were capable of the *intention* which the law presumes from unlawful acts.

The next case cited is the case of The State v. Bill Jefferson, a slave, 3 Harrington, 571. "The prisoner was indicted for an assault and battery with intent to murder. He shot at a negro girl with a loaded gun, and within shooting distance. None of the shot hit her. The prisoner, when arrested, said that he meant to cripple, but not to kill."

This is the whole statement of the case contained in the report. The opinion of the court is as follows: The defendant is indicted for an assault on Alice James, with intent to commit murder; and the point is made, and has been argued, whether the jury must be satisfied that the defendant had an actual intention to kill; or whether the law implies the intent in case of an act likely to produce death, as it would imply malice from such an act, where death ensued. The act of assembly provides that if any negro or mulatto slave shall, with violence, make an assault upon another, with intent to commit murder, he shall be guilty of a felony, &c.

Under this act, we are of opinion that the intent must be proved, as well as the assault; but as the intent is a matter that can only be proved by other facts, all such facts must be considered in proof of the intent; as the character of the assault, the weapon used, the danger of producing death, and the means used to produce or avoid death.

"Such has been the decision under a similar British statute (Cruse's case, 8 Carr. & Pay., 541; 34 Eng. C. L. R., 522)."

The case is as barren of authority as the case cited from Missouri. The citation of Cruse and Wife, as a case in point, is a mistake, as already shown; and the reasoning of the court, if tending at all to a conclusion on the point in controversy, rather seems to favor the doctrine of the text-books, that the

*intent* may be proved "by inference of law from other facts proved." (3 Greenleaf Ev., p. 17, § 13.)

After quoting the act of assembly of Delaware, the court says: "Under this act, we are of opinion that the intent must be proved, as well as the assault; *but* as the intent can only be proved by other facts, such facts are to be considered in proof of the intent, the assault, the weapon, the danger, the means used to produce or avoid death."

Does not the court mean to say, as a matter of law, that *intent is to be inferred or presumed* from the fact of shooting a gun loaded with shot, in shooting distance, at another, in the absence of all other facts? In any event, whatever may have been the views of the court on this point, they are not sufficiently expressed to justify us in overturning a doctrine which has had the sanction of the ablest judges and text-writers for more than a century.

The next authority relied on in the brief of counsel for defendant is a reference to 1 Bishop Crim. Law, § 514, treating of *attempts.*

The author, in § 248, treating "of what is a sufficient criminal intent," says: "The law presumes that every person intends to do what he does, and intends the natural, necessary, and even probable consequences of his act. Of course the *presumption of an intent* to do the act is always open to be rebutted by evidence; but when this *intent* is established, the deduction that the consequences were also intended is *generally,* not *always, conclusive.*"

When the author comes to treat of "attempts" in the section preceding the one cited by defendant's counsel, § 513, he says: "We have already seen that every man is *presumed* to intend the natural, necessary, and even probable consequences of an act which he intentionally performs; and that, in some cases, *he is not permitted to deny this presumption.*" The author illustrates this class of *conclusive* presumptions by referring to cases of libel, bawdy-houses, forgeries, false oaths, &c.; and adds: "Here, if a man intentionally does the thing, he cannot be heard to say, in his defense, that he did not intend the ulterior mischief." Immediately follows, § 514: "Then,

in considering *technical attempts*, the jury may take into view the nature of the act, as matter of evidence, in deciding upon the particular intent with which it was performed. *And they will be told by the court that the defendant should be presumed to have intended the natural and probable consequences of his act.* But they cannot go further. The doctrine of an *intent in law*, different from the *intent in fact*, is not applicable to these technical attempts; and the prisoner must be acquitted if his *real intent* were not, in fact, the same which is laid in the indictment." In other words, the author intends to say that "the doctrine" just spoken of in the previous section, 513, of *conclusive presumptions* of an intent in law excluding proof of the intent in fact, is not applicable to these technical attempts. The "legal fiction" or conclusive presumption of an intent in law, different from the real intent in fact, is not extended to technical attempts, made criminal by reason of the *special intent* with which the act is done. In this class of cases the presumption of law, which the author says "will be told by the court" to the jury, still remains; but it is only a *prima facie* presumption, not *conclusive and indisputable.* The jury may and should look into all the evidence in the cause, to see whether the *real intent* was different from that laid in the indictment; and if so, they should acquit. If, however, the evidence should disclose two or more intents, and among them the one charged in the indictment, he shows in §§ 249, 250, that the defendant should then be convicted of the one charged. It is most manifest, therefore, that Mr. Bishop, whose language is cited in other cases we shall presently notice, never designed to give his sanction to the doctrine contended for by counsel for defendant, but holds directly the opposite.

The next case cited in the brief of counsel for the defense, is the case of Ogletree v. The State, 28 Ala. R., 693. It is cited in support of the rule stated by Mr. Bishop in his work on Criminal Law, just considered at §§ 513, 514, and seems to be on this point entirely consistent with the views we have just expressed on that subject. The court says: " Whether he had that intent at the time of the alleged assault is a question of

fact for the jury to decide; and in deciding that question, *the jury ought to act upon those presumptions, which are recognized by the law,* so far as they are applicable, and their own judgment and experience, as applied to all the circumstances in evidence."

The instructions of the court below on the point we have been considering, are in conformity with our views of the law, and are therefore not properly assigned for error here.

It is insisted that the second and sixth instructions given for the state "are erroneous, in holding that proof that the defendant assaulted his master in resistance of legal chastisement with a deadly weapon, made out a *prima facie* case against him, upon which the jury was as much bound to act as if it had been conclusive, unless that *prima facie* case were rebutted and overcome by the whole proof in the case."

The second instruction is in these words: "That malice is implied by law from the nature and character of the weapon used; and if the jury believe from the testimony that the master of the slave Jeff was about to inflict legal chastisement, and that Jeff resisted that legal chastisement, and made an assault upon his master with a deadly weapon, that this is *prima facie* evidence that he intended to kill his master; and the jury will find him guilty as charged, unless, from the whole proofs in the case, they are satisfied that he did not intend to kill."

The sixth instruction is as follows: "That when a *prima facie* case has been made out against the defendant, the jury are bound to act on that *prima facie* case, as much as if it were conclusive, unless that *prima facie* case is rebutted and overcome by the whole proof in the case."

These instructions are not liable to the objections made under the proofs in this case. They do not involve the question *as to changing the burden of proof,* nor do they exclude any fact in the cause from the consideration of the jury; but they leave the jury free to consider and decide the only point insisted on for defendant—and that is the main point charged in the indictment—whether he intended to *kill* deceased; and this they are to consider from all the proofs in the case.

We are satisfied, on the last ground, that the verdict is right, under facts appearing in this record.

Judgment affirmed.