HOLDEN *v.* STATE

No. 39917 February 13, 1956 85 So. 2d 208

*Wingo & Finch,* Hattiesburg, for appellant.

*J. R. Griffin,* Asst. Atty. Gen., Jackson, for appellee.

Holmes, J.

The appellant was convicted of an assault upon Osborne Moody with a deadly weapon, towit: a 22 rifle, with intent to kill and murder him. He was sentenced to two

years in the State penitentiary and appeals. He argues two grounds for reversal of the judgment of conviction.

He contends, first, that the evidence of the State is insufficient to prove the intent to kill. The State's proof showed substantially the following:

The difficulty occurred in the White Sand Community, a rural section out from Poplarville. Osborne Moody was a deputy sheriff. He received information that there had been some trouble between the appellant and a man named Kilby, and that the appellant had gone to his home for a gun and had said that he was going to kill Kilby. One of the witnesses for the State testified that the appellant said that he was not going to be arrested. Another testified that the appellant said he was going to kill Osborne Moody. The deputy drove out in his car for the purpose of locating and arresting the appellant. On the way, he saw the appellant approaching him in his car and attempted unsuccessfully to flag him down. When the appellant failed to stop, the deputy turned his car around and pursued him, sounding his siren. The appellant turned off the road and drove down to a branch and stopped his car at a bridge and got out and ran into the woods carrying his rifle. The deputy drove down to the bridge and while there, Benton Burge and Vernon Wheat drove up. After some conversation and after the deputy had removed the ignition key from the appellant's car, he and Vernon Wheat drove on to a point in front of Archie Wheat's house where the shooting is said to have occurred. The deputy and Vernon Wheat got out of the car and were joined by Archie Wheat, who had come out from his home. While the three of them were standing in front of the deputy's car, the appellant appeared from out of the woods about 200 yards away and called to the deputy, "Osborne Moody, damn it, or God damn it, come and get me." One of the witnesses for the state testified that the appellant called the deputy's name and applied to him a vile epithet. The

appellant then fired his rifle in the direction of Moody. He shot twice, and the bullets came so close to Moody and Vernon Wheat that they could hear the whistle of the bullets. No one was struck by either of the shots. The deputy removed his shotgun from the back of his car and fired once into the air. The appellant then disappeared. He was later arrested by the deputy and placed in the back seat of the deputy's car. While the deputy and the driver of the car were trying to get the car started, the appellant got out of the car and ran away. The next day, he came to the sheriff's office and surrendered.

The evidence for the appellant showed that he did not point, aim, or fire his rifle at Osborne Moody but fired into the air. The conflicting evidence created an issue for the jury.

 ██ The State's proof showed that the appellant committed an assault upon Osborne Moody by the use of a deadly weapon. This was prima facie evidence of an intent to kill. Jeff v. State, 39 Miss. 593. ██ The state, however, did not rest its case upon the prima facie showing. Its proof as a whole, as appears from the facts related, amply warranted the jury in finding that the appellant fired his rifle at Osborne Moody with intent to kill and murder him. We, therefore, find no merit in the appellant's contention that the State's proof was insufficient to show the intent to kill.

 ██ It is next contended by the appellant that the trial court erred in permitting the State to show by way of impeachment and contradiction of the appellant's witness Archie Wheat that the said witness had stated to the said Osborne Moody after the shooting, that the appellant had threatened the life of him and his wife, and that he wanted to know what he could do to protect his home in the event the appellant came to his home that night. The witness had testified on cross-examination that he was not afraid because of what had happened,

and that he did not state to Moody that the appellant had threatened the life of him and his wife, and that he did not ask Moody what he could do to protect his home in the event the appellant came to his home that night. In rebuttal of this testimony, and by way of contradiction and impeachment of the witness, Archie Wheat, the State introduced as a witness Osborne Moody, whereupon he was asked the following question: "On the afternoon while you were still there at Arch Wheat's place after the shooting occurred, what if anything did Arch Wheat ask you about his rights to defend himself or his home?" To this question, Moody answered: "He said Murph threatened him and his wife and asked what if he comes back here tonight, what can I do?" Moody further testified that he told Arch Wheat that he had a right to protect his home. This evidence was objected to by the appellant, and a motion was made to exclude the evidence and to order a mistrial.

The appellant's objection and motion were overruled. We think this evidence was clearly incompetent and that the court committed error in admitting it. It was not relevant to the issue in the case. The only issue in the case was whether or not the appellant had fired upon Moody with intent to kill and murder him. Whether or not the appellant had threatened Archie Wheat and his wife was not relevant to the issue involved. The rule in the cases of Williams v. State, 73 Miss. 820, and Whitt v. State, 210 Miss. 817, 50 So. 2d 385, is stated as follows:

"Whilst the unsworn statement out of court may be used to contradict the sworn statement in court, whether the statement sought to be contradicted is made by the witness on his direct examination or on his cross-examination, in either case the statement in court must be one embodying a fact substantive in its nature and relevant to the issue made in the case. And if such embodied fact be one not in its nature substantive and so relevant to such issue, and therefore one which the cross-examining

party could prove as a part of his case, then the unsworn statement out of court cannot be used to contradict the statement in court, though the cross-examining party may ask as to such unsworn statement, being bound by the answer.''

The Williams case, supra, also approved the following: ''The test of whether a fact inquired of in cross-examination is collateral, is this, would the cross-examining party be entitled to prove it as a part of his case, tending to establish his plea?''

It is clear that the State would not have been entitled to introduce this evidence as a part of its case and it was error to permit its introduction in rebuttal and by way of impeachment of the witness Archie Wheat. We think the evidence was inflaming and prejudicial. Archie Wheat's wife was the sister of appellant. The effect of the evidence was to picture the appellant as a lawless and violent character who would threaten the life of his sister and brother-in-law. It was calculated to influence the jury to the prejudice of the appellant, and we can not say that the jury was not thereby so influenced. We are of the opinion, therefore, that the admission of the evidence constitutes reversible error.

Accordingly the judgment of the court below is reversed and the cause remanded for a new trial.

Reversed and remanded.

*McGehee,* C.J., and *Hall, Lee* and *Ethridge,* JJ., concur.