TILLMAN *v.* STATE

No. 39821          November 7, 1955          83 So. 2d 86

*Howard R. Pigford,* Meridian, for appellant.

*Joe T. Patterson, Asst. Atty. Gen.,* Jackson, for appellee.

HOLMES, J.

The appellant was convicted in the Circuit Court of Lauderdale County on an indictment charging him with assault and battery with a deadly weapon, towit, a shotgun, upon Helen Irby by shooting and wounding her, with intent to kill and murder her. He was sentenced to a term of seven years in the State penitentiary and from the judgment of conviction he prosecutes this appeal.

The facts as disclosed by the State's proof are brief, and we state them as follows: The appellant operated an establishment in a building at or near Marion in Lauderdale County. It appears to have been a combination cafe and dance hall wherein beer was served to the public. On a Saturday or Sunday night, on the 20th or 21st of November, 1954, a fight occurred in the place in which the prosecuting witness, Helen Irby, and one J. W. Martin were the principal participants. The fight developed into a general brawl, in which someone hurled a piano stool and other particles of furniture were hurled and a table was turned over and general disorder resulted. The appellant was not a participant in the fight. When the atmosphere cleared, the appellant ordered the participants, among them, Helen Irby and Lucy Tillman, a sister-in-law of the appellant, to leave the building and not come back. As Helen Irby and Lucy Tillman were leaving, one of them remarked that they were leaving but that they would come back. In about an hour and a half or two hours, which was sometime before mid-

night, Helen and Lucy returned. Lucy preceded Helen into the building, remarking, "Where is all the bad s--- of b------ at?" The wife of appellant answered that there were no bad people there. Shortly, Helen followed Lucy into the building and went over to the counter where she stopped and stood for some ten minutes. She was wearing blue jeans and she stood with one foot on the foot rail of the counter, one arm on the counter, and one hand in the pocket of her blue jeans. The appellant was behind the counter and on the opposite side from Helen. Helen made no threat or demonstration and committed no overt act indicating a purpose to attack the appellant, and exhibited no weapon of any kind. The appellant told her three times to leave, and she answered she would leave when Lucy left. The appellant then reached for his shotgun, which was behind the counter, and took a shell from his pocket and loaded the gun and fired at Helen, striking her in the stomach. According to the undisputed proof, he fired at a time when Helen was wholly unarmed and making no demonstration of any kind to attack the appellant or do him any bodily harm. The parties were about ten feet apart and on opposite sides of the counter when the appellant fired. Helen fell to the floor and according to some of the witnesses her whole stomach came out. The appellant left the place after the shooting, telling his wife to tell the officers if they came that he would be at home. Helen was later removed in an ambulance to the hospital where she remained for about six weeks and miraculously recovered.

The testimony for the defense corroborated the state's witnesses in all material respects, except the appellant testified that Helen told him as she came to the counter that she was going to get him, and that he thought she had an automatic in her pocket and that she was going to kill him, and appellant's daughter testified that Helen "looked mean" at the appellant as she stood at the counter. The appellant admitted that at the time he fired Helen was not exhibiting any weapon and was mak-

ing no demonstration to do him any bodily harm. He said at one time in his testimony that he didn't know why he shot her, and at another time that he shot her because he was scared.

The appellant pleaded self defense, and the court submitted to the jury under proper instructions the issue as to whether or not at the time the appellant fired he had reasonable grounds to apprehend that he was in real or apparent danger of losing his life or suffering great bodily harm at the hands of Helen Irby. The jury resolved this issue against the appellant, and we think rightly so.

The appellant has made a number of assignments of error but we shall address ourselves to only those assignments which, in our opinion, merit discussion.

The appellant complains that the trial court erred in sustaining the State's objection to testimony offered by the appellant to show the general reputation of the prosecuting witness, Helen Irby, for peace or violence was bad. Such character of evidence is generally admissible only in cases of circumstantial evidence, to be considered by the jury in aid of their inquiry into the origin and progress of the conflict in which the accused was engaged, and in cases where the proof shows that the deceased or prosecuting witness has committed some overt act or made some hostile demonstration or threat indicating a present purpose to do the accused some great bodily harm, and the evidence is offered as bearing upon the reasonableness of the accused's claimed belief that an attack was about to be made upon him. Chase v. State, 46 Miss. 683; Spivey v. State, 58 Miss. 858. This is not a case of circumstantial evidence, and further, the proof is wholly devoid of any overt act or hostile demonstration committed by Helen Irby toward the appellant, or of any threat by Helen Irby toward the appellant except the veiled statement testified to by the appellant that she was going to get him. The appellant himself, however,

admitted that she exhibited no weapon and made no effort to draw a weapon or to do the appellant any bodily harm, and made no hostile demonstration of any kind toward the appellant, although she stood on the opposite side of the counter from him for some ten minutes. The proof further developed that Helen Irby was wholly unarmed, and had nothing in her pocket but a fifty cents piece. We think, therefore, that the court was not in error in excluding the proffered testimony.

■■ ■ It is also contended by the appellant that the trial court erred in refusing to permit him to show previous fights between the prosecuting witness and others in the appellant's place of business. It was not claimed that appellant was involved in any of such fights. Such evidence was of no probative value in determining the guilt or innocence of the appellant on the charge preferred against him, and was wholly immaterial and irrelevant to the issues involved, and we think the trial court properly excluded it.

■■ ■ It is further contended by the appellant that the trial court erred in excluding testimony on cross-examination of the State's witness Bill Alford, with reference to whether the appellant sought to arrange for medical aid for the prosecuting witness after the shooting and before leaving the scene of the difficulty. It is not contended, and could not be successfully maintained, that the claimed offer to obtain medical aid was a part of the res gestae, but it is argued that the evidence was offered to rebut any claim that appellant fled the scene. It was not contended by the State, and is not contended on this appeal, that appellant fled the scene. In fact, it appears in the proof introduced without objection that when he left the scene he told his wife he was going home and to tell the officers if they came that they could find him there, and they did thereafter, in fact, find him at his home. There was, therefore, no issue as to flight by the accused, and the proffered testimony was immaterial. Further, however, it is clear that the testimony was

wholly incompetent as being self-serving. "Evidence that after a mortal wound was inflicted accused offered to wait on or stay with the dying man, or went for a physician, is incompetent as self-serving." 22 C.J.S., Criminal Law, p. 1271. We therefore find no merit in this contention of the appellant.

■■■ The appellant also contends that the verdict of the jury is contrary to the overwhelming weight of the evidence. The principal contention of the appellant under this assignment is that the proof is insufficient to show an intent to kill on the part of the appellant. In the case of Jeff v. State, 39 Miss. 593, this Court held that proof of the unlawful use of a deadly weapon by the accused in a case of assault and battery is prima facie evidence of an intent to kill. Again in the case of Howard v. State, 212 Miss. 722, 55 So. 2d 436, this Court held that the use of a deadly weapon by the accused in a case of assault and battery is prima facie evidence of an intent to kill, and that the issue of intent is ordinarily for the jury. The proof in the case at bar shows that Helen Irby was fired upon by a shotgun. According to the proof, the appellant fired upon the prosecuting witness at a time when she was making no demonstration to do him any bodily harm. He said on cross-examination in one place that he didn't know why he did it, and in another place he said he shot because he was scared. The appellant argues that since he hit the prosecuting witness in the stomach it does not indicate an intention to kill, since her body from the top of the counter up was exposed and the accused could have shot her in the head. It might be said here, however, that there are few more vulnerable spots in the human body than the stomach. We think that the appellant's contention under this assignment is without merit. The jury were amply warranted under the proof in finding that the defendant was guilty beyond a reasonable doubt. In fact, the proof in this record to support that finding is overwhelming.

■ ■ The appellant also complains that the trial court erred in overruling his motion to be allowed one hour for argument of his case to the jury. The power of the court to limit the argument of counsel is recognized by this Court in the case of Senior, et al v. Brogan, 66 Miss. 178, 6 So. 649. In that case, this Court held that the trial court had unreasonably limited the argument of counsel in order to accomodate his own personal convenience, that is to say, in order that he might get away on an early train and return to his home. The Court said, however, speaking through Judge Cooper: "The power of the court to limit argument of counsel springs from the duty of protecting other litigants and the public against the unnecessary use of the time of the courts." In the case at bar, the court limited each side to forty minutes, including the reading of instructions. The trial of the case began at nine o'clock in the morning, and by ten minutes past four in the afternoon the testimony had been concluded. Six witnesses appeared for the State and eleven witnesses appeared for the defense. Of the eleven witnesses for the defense, five were offered to show the alleged bad character of the prosecuting witness. Objection to the testimony of these witnesses was sustained by the court. The issue was a simple issue, that is, whether or not appellant fired at a time when he was in real or apparent danger at the hands of Helen Irby. In other words, his defense was self-defense. In view of the small number of witnesses and the simple issue involved, we are unable to say that the court abused its power in the limitation which it placed upon the argument of counsel. Further than that, it is manifest that the action of the court in limiting the argument was of no prejudicial effect, since the testimony in the case as to the appellant's guilt is overwhelming.

■ ■ It is further seriously contended by the appellant that the jury was exposed to prejudicial influence during its deliberation and that, therefore, the verdict of the jury should be set aside. This assignment is found

in the tenth ground of appellant's motion for a new trial and alleges substantially the following: The case was submitted to the jury between five and five-thirty o'clock in the afternoon of February 15, and around eight o'clock the jury reported that they were unable to arrive at a verdict, and the court instructed the bailiff to take the jury to supper and lock them up over night in the jury dormitory. The next morning, the judge arrived in the courtroom about nine o'clock. No verdict had then been returned. The judge announced that he wanted to see the district attorney, the county attorney and the deputy sheriff in his office, which was immediately through a door to the rear of the judge's bench. The judge accompanied by these officials went into his office and closed the door. His office adjoined the room in which the jury was deliberating. Airconditioning was in the process of being installed in the courthouse and a small hole about ten by fourteen inches in dimensions had been made at the top of the wall near the ceiling. The opening went all the way through the wall. Appellant's motion alleged that he did not know what took place in the conference between the judge and the other officials but that he was informed that the subject of discussion was a retrial of this case in the event the jury disagreed. It was not set forth in the motion that the conversation had by the officials was in tones audible to the jury, or that the jury heard the discussion, or that they could have heard the discussion. It is not set forth in the allegations of the motion that such discussion prejudicially affected the jury, but only that the jury may have heard the conversation and may have been prejudicially affected thereby. The appellant moved the court to be permitted to introduce evidence in support of the allegations of the motion. The court declined to hear proof in support of the motion, and we think committed no error in so doing. Accepting as true the allegations of the motion, they showed nothing more than a mere possibility that the jury heard what was said in the conference and, if so, a mere possi-

bility that the jury could have been prejudically influenced thereby. The mere possibility that the jury may have heard what was said, and if they did, they may have been prejudicially influenced thereby, is insufficient to vitiate the verdict. ██ █ In the case of Sanders v. State, 150 Miss. 296, 116 So. 433, the Court said: "The possibility that a jury has been exposed to outside influence is not sufficient to vitiate their verdict." To the same effect is the case of Turner v. State, 176 Miss. 862, 170 So. 642. We therefore find that this contention of the appellant is not well founded. To hold otherwise would be to grant this appellant a new trial on the merest technicality. Common sense dictates that even if the jury had heard what was said it would not have influenced the jury to return a verdict against the appellant, but would have had the effect of causing the jury to persist in their disagreement, thus bringing about an early discharge of the jury. While well-reasoned, established legal precedents and fundamental principles should never be sacrificed, it is not required that the law shall shut its eyes to the elements of common sense. Too often mere technicalities which could have had no prejudicial effect upon the outcome of the trial and which violate no fundamental right of the accused are invoked to obtain a new trial for those whose guilt is manifest. We are accordingly of the opinion that the trial court committed no error in refusing to permit the appellant to offer proof in support of the allegations of the motion.

We have carefully considered the other assignments of error not herein specifically discussed and we are of the opinion that the same present no reversible error. The judgment of the court below is accordingly affirmed.

Affirmed.

*Roberds, P.J.,* and *Hall, Ethridge* and *Gillespie, JJ.,* concur.