204 So.2d 848 (1967)
Callie Mae AMIS
v.
STATE of Mississippi.
No. 44382.
Supreme Court of Mississippi.
December 4, 1967.
Suggestion of Error Overruled January 2, 1968.
*849 Laurel G. Weir, Philadelphia, for appellant.
Joe T. Patterson, Atty. Gen., by G. Garland Lyell, Jr., Asst. Atty. Gen., Jackson, for appellee.
PATTERSON, Justice.
This appeal arises from the Circuit Court of Newton County where appellant, Callie Mae Amis, was indicted and tried for murder, found guilty of manslaughter and sentenced to serve a term of ten years in the state penitentiary.
At approximately two o'clock on the afternoon of the shooting  Sunday, July 31, 1966  the deceased, Tom Larkin, went with his wife to a cafe owned and operated by appellant. The cafe was in one side of a small frame duplex house, and appellant lived in the other side. Appellant told Larkin to leave because he was cursing and using vulgar language. Larkin did leave, but returned at approximately eight o'clock that evening to ask his wife Maud if she was ready to go home. Appellant appeared at the doorway of her bedroom and said to Larkin "I thought I told you to stay away from here." According to the testimony of Maud Larkin, her husband answered: "What have I done?", whereupon appellant "went back to her bedroom and got her gun and before she returned back on the porch he had already walked off, back to his car." Again according to Maud's testimony, her husband had nothing in his hand, made no threats, and had walked four or five steps from the porch toward his car when appellant shot him in the back.
Appellant's version of the shooting is as follows:
He was coming in the yard when I got the gun. * * * He had got to the steps by the time I got back there. * * He wasn't walking fast. * * * I had got the gun and told him to go on and *850 he was coming on the steps and said "I'll kill all you son-of-a-bitches."
According to appellant, Larkin had a knife in his hand and was coming on to the second and last step to the porch when he used the above language. She testified that she had already aimed the gun at him and was in the process of pulling the trigger when Larkin whirled around:
Q. When did you pull the trigger?
A. He was coming on the steps. I told him to stay away and he said "I'll kill all of you son-of-a-bitches." I aimed and shot. I aimed down and I shot.
Q. What was he doing when you shot him?
A. Had his knife in his hand coming on the steps.
Q. He was coming up facing?
A. Coming up facing.
Q. Did you shoot him in the front or the back?
A. As he whirled that's where he got it at.
However, when on continued direct examination her own attorney asked, "How suddenly did he turn?", appellant responded, "Well, not fast." In addition, the record reveals that on cross-examination of appellant the following transpired:
Q. He wasn't anywhere near within knife range, was he?
A. He told me he was going to kill me.
Q. Yes, but he wasn't nowhere near you, he couldn't reach out and cut you with the knife at the time you shot him?
A. He couldn't reach to me.
It is undisputed that Larkin was shot in the back just under the right shoulder blade and that the bullet emerged just under the rib border in front on the right side.
Although appellant testified that Larkin was holding a knife at the time of the shooting, other witnesses testified that he was not. There was evidence, however, that Larkin owned a long knife which he habitually carried with him and that he had had it open playing around with it during the early afternoon.
The primary assignments of error are:
1. That the verdict is against the overwhelming weight of the evidence;
2. That the court erred in granting State's Instruction No. 8;
3. That the lower court permitted the introduction of evidence obtained from appellant without a valid search warrant;
4. That the lower court refused to permit appellant to show the general reputation of the deceased for peace or violence in the community in which he lived;
5. That the lower court refused appellant's motion to quash the indictment and jury panel because of the systematic exclusion of women and other groups from the grand and trial juries.
As to the assignment relative to the weight of the evidence, we have carefully considered the evidence in this case and are of the opinion that although there was some conflict in the testimony, there was ample evidence to support the jury's verdict.
The assignment of error relative to Instruction No. 8 granted for the State is without merit. That instruction is as follows:
The Court instructs the jury for the State of Mississippi that you are the sole judges of the credibility of the witnesses who testify in this case, and in determining what weight you should give the testimony of any witness, you have the right to consider their demeanor upon the witness stand, what interest, if any, they have in the results of the trial *851 if it has been shown by the evidence that they have any, and all other facts and circumstances in the evidence in this case.
This Court held in State v. Jennings, 50 So.2d 352 (Miss. 1951), that where there are several witnesses on a particular issue the court may instruct the jury in general terms that in passing on the testimony of witnesses they may consider the interest which a witness may have in the result as shown by the evidence. That is the situation we have here. Therefore, none of the cases cited by appellant have application to the case at bar. The correct statement of the rule with respect to the propriety of this instruction is given in Reed v. State, 237 Miss. 23, 28, 112 So.2d 533, 534 (1959), wherein it is specifically pointed out that:
The condemnation of this instruction does not apply where there are witnesses for defendant on the facts other than the defendant himself.
The assignment of error relative to the search and seizure of the pistol and cartridges from appellant is also without merit, as it was incident to a lawful arrest. Wilson v. State, 186 So.2d 208 (Miss. 1966); Bass v. State, 254 Miss. 723, 182 So.2d 591, 183 So.2d 483 (1966); Fuqua v. State, 246 Miss. 191, 145 So.2d 152 (1962), appeal dismissed, cert. denied, 372 U.S. 709, 83 S.Ct. 1018, 10 L.Ed.2d 125, rehearing denied, 373 U.S. 947, 83 S.Ct. 1536, 10 L.Ed.2d 703 (1963).
The next assignment of error is predicated upon the fact that there is a systematic statutory exclusion of women from jury service. This question has been foreclosed in Mississippi by Pendergraft v. State, 191 So.2d 830 (Miss. 1966), and State v. Hall, 187 So.2d 861 (Miss. 1966), both cases being based upon Mississippi Code 1942 Annotated section 1762 (1956) wherein the legislative intent was expressed as to who are competent jurors, "[e]very male citizen not under the age of twenty-one years * * *." It is the opinion of this Court that legislative enactment rather than judicial action is necessary to modify or change the plain intent of the statute.
Neither do we find any merit in the last assignment of error, that the lower court refused to permit appellant to show the deceased's general reputation for peace or violence in the community in which he lived. In Freeman v. State, No. 44,518, Miss., 204 So.2d 842, decided this date, we held that one who is accused of murder and who pleads self-defense may show the deceased's general reputation for peace or violence in the community in which he lived where there is a question as to who the aggressor was, even though the accused may not have had knowledge of the deceased's reputation at the time of the homicide. In the instant case there is no question as to who the aggressor was.
The general rule is stated in 40 C.J.S. Homicide § 272c at 1223 (1944):
Evidence of the violent and dangerous character of the decedent is inadmissible unless there is a claim of self-defense supported by evidence of some overt act or hostile demonstration on the part of the decedent or one of his confederates; and consequently such evidence is not admissible where it appears that the accused provoked the difficulty, or was in no danger, or did not believe himself to be in danger, or did not avoid the difficulty when he might safely have done so, or where he claims the killing was accidental, or denies that he killed the deceased. (Emphasis added).
Missisippi has followed this general rule for many years. Wesley v. State, 37 Miss. 327 (1859), cited by appellant, is authority for the propriety of the trial court in this case in not allowing proof of the reputation of the deceased. In that case it was held that where the defendant had no reasonable cause from the circumstances of the case to believe himself in danger he could not show the violent and cruel character of the deceased. More recently *852 in Tillman v. State, 225 Miss. 275, 83 So.2d 86 (1955), the rule is stated that where the case is not one of circumstantial evidence and where the proof is devoid of any overt hostile act of the prosecuting witness or the deceased, it is proper for the trial court to exclude evidence as to the prosecuting witness's character or the deceased's reputation for peace or violence. The proof in this case showed conclusively that Larkin, the deceased, was shot in his back and was not advancing on the appellant when she shot him. See also Pinter v. State, 203 Miss. 344, 34 So.2d 723 (1948), and compare Shinall v. State, 199 So.2d 251 (Miss. 1967), and Freeman v. State, No. 44,518, Miss., 204 So.2d 842, decided this date.
We have carefully considered the briefs of both the State and the defendant, the assignments of error, and the evidence in the record, and have reached the conclusion that the conviction should be affirmed.
Affirmed.
ETHRIDGE, C.J., and INZER, SMITH, and ROBERTSON, JJ., concur.