392 So.2d 1154 (1981)
Roy Estine FORNETT
v.
STATE of Mississippi.
No. 52385.
Supreme Court of Mississippi.
January 28, 1981.
H. Bernard Gautier, David A. Stewart, Jr., Pascagoula, for appellant.
Bill Allain, Atty. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty, Gen., Jackson, for appellee.
Before ROBERTSON, P.J., and BROOM and HAWKINS, JJ.
ROBERTSON, Presiding Justice, for the Court:
Roy Estine Fornett was indicted, tried and convicted in the Circuit Court of Jackson County for the murder of Levernon Thompson, alias "Monkey Man". He was sentenced to life imprisonment in the Mississippi Department of Corrections.
On the morning of February 23, 1979, Fornett, through a window in his home, saw Thompson enter Collier's Place. He armed himself with a 12-gauge single-barrel shotgun, loaded with buckshot, and proceeded next door to Collier's Place. Fornett testified that his purpose was to ask Thompson why he had robbed him a few days earlier.
Thompson and several others were standing around talking in the back room of Collier's Pool Hall. Percy L. Williams and Edgar Earl Collier testified at the trial that Fornett walked into the room, shot Thompson in the left chest, and then left. Both testified that no words were spoken nor was any movement made by Thompson toward Fornett. Thompson died instantly.
Defendant testified that he asked Thompson why he had robbed him, that Thompson did not answer but just looked at him, that he then shot Thompson and left. Defendant *1155 admitted on the witness stand that he did not see a gun in Thompson's hand, nor did Thompson make any move toward him.
In response to a police radio call about the shooting, Patrolmen Robertson, Massey and Miller of the Pascagoula Police Department, proceeded to Collier's Place to investigate the shooting. Upon being advised that Fornett did the shooting, they proceeded to his apartment in Carver Village. Officer Robertson testified that he knocked on the door, that defendant Fornett came to the door, opened it and said: "I'm the man you want. I'm the one that shot him." Robertson further testified that, after placing defendant under arrest, he noticed a shotgun lying on a chair and he asked defendant was that the gun, and defendant replied "Yeah".
Defendant was then taken to the police station where his Miranda rights were explained to him and where he signed a waiver of these rights in the presence of Anthony L. Best and Norvel Robertson. After again explaining to defendant his Miranda rights, Criminal Investigators Bullock and Best took a five-page statement from defendant, which he signed and they witnessed. In his statement, Fornett admitted that, upon seeing Thompson go into Collier's Place, he got his shotgun, went across the street and entered Collier's Place and confronted Thompson, that when he asked Thompson why he robbed him Thompson "didn't say nothing, he just looked at me." Whereupon, Fornett said that he shot Thompson. When asked by Investigator Bullock if the shotgun found in the chair in the apartment was the one used, defendant Fornett answered "yes".
Defendant assigns as error:
I. The court erred in overruling the defendant's Motion to Suppress his statement for the reason that the same was inadmissible as being involuntarily made.
II. The court erred in sustaining the state's objection to testimony proffered by the defendant as to the reputation of the deceased for violence.

I.
Defendant made his written confession only after his Miranda rights had been fully explained to him and after he had signed a waiver of these rights. The uncontradicted testimony was that there were no threats, promises, duress, fear or pressure of any kind. The testimony was that Fornett's confession was freely and voluntarily made, after a full explanation of his rights to him.
Defendant contends that, before his Miranda rights were explained to him and after he had spontaneously stated that he shot Thompson, Officer Robertson wrongly asked him if the shotgun lying on a chair was the gun used. Defendant answered "Yeah". Defendant contends that this one question asked violated his rights and constituted reversible error. There is no merit in this contention.
The evidence is undisputed that when Officer Robertson knocked on defendant's door, the defendant opened the door and, upon seeing the two officers in uniform, blurted out "I'm the man you want. I'm the one that shot him." The shotgun lying across the chair was in plain view, and Robertson asked one question after defendant had already confessed, "Was that the gun used?", to which question the defendant answered "Yeah". The defendant admits that the spontaneous statement "I'm the one that shot him", made before any question was asked, was admissible. The latest case where we have held such a spontaneous statement admissible is Neal v. State, 386 So.2d 718 (Miss. 1980).
In Nevels v. State, 216 So.2d 529 (Miss. 1968), we also held that a question concerning the weapon used was admissible under the Miranda exception of "general on-the-scene investigation." In Nevels, we said:
"In the instant case, the statements were given `freely and voluntarily without any compelling influences.' These initial admissions by defendant, as he walked toward the patrolman, in which he confessed to the crime of stealing the *1292 wire, were `volunteered statements' not barred by the Fifth Amendment. Nor do we think that the subsequent conversation of Nevels with Patrolman Langford affects the admissibility of Nevels' volunteered statements. It was substantially within another Miranda exception, general on-the-scene investigation and questioning as to facts surrounding a crime. 384 U.S. [436] at 477, 86 S.Ct. [1602] at 1629, 16 L.Ed.2d [694] at 725. To the very limited extent, if any, that it was not of this nature, it was cumulative and entirely harmless. Miss.Sup.Ct. Rule 11 (1967); see Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
"State v. Gosser, 50 N.J. 438, 236 A.2d 377 (1967), somewhat analogous to the present case, states:
`The decision [Miranda] recognized, however, at least two exceptions. One is general on-the-scene questioning as to facts surrounding a crime, and the other, statements freely volunteered without compelling influences. 384 U.S. at pp. 477-478, 86 S.Ct. at p. 1629, 16 L.Ed.2d at pp. 725-726."
216 So.2d at 531.

II.
The trial court was correct in excluding any evidence of the deceased's reputation for violence because a proper predicate had not been laid for the introduction of such evidence.
McCormick on Evidence, § 193 at page 461 (2d Ed. 1972), has this to say about such evidence:
"When the accused has produced evidence that the deceased attacked him, thus grounding a claim of self-defence, this when met by counter-evidence raises an issue of conduct: was the deceased or the accused the first aggressor? It is almost universally held that when such evidence has been produced the accused may introduce testimony of the reputation of the deceased for turbulence and violence." (Emphasis added).
By the defendant's own testimony from the witness stand, and by his own written statement, freely and voluntarily given, he made it clear that he, the defendant, was the aggressor, that he had sought Thompson out and that he shot Thompson when Thompson did not have a weapon in his hand and had made no move toward him. No overt act, hostile move or threat was made by Thompson, according to the defendant's own testimony. Under our rule announced in Tillman v. State, 225 Miss. 275, 83 So.2d 86 (1955), and reiterated in Freeman v. State, 204 So.2d 842 (Miss. 1967), such proffered testimony was clearly inadmissible and the trial court was correct in excluding it.
There being no reversible error committed in the trial of this case, the conviction and sentence are affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.