592 So.2d 993 (1991)
Dwight D. WILSON a/k/a Beemon
v.
STATE of Mississippi.
No. 89-KA-0866.
Supreme Court of Mississippi.
December 31, 1991.
*994 Joseph A. Kieronski, Jr., William B. Jacob, Daniel P. Self, Jr., Self & Jacob, Meridian, for appellant.
Mike C. Moore, Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and SULLIVAN and McRAE, JJ.
SULLIVAN, Justice, for the Court:
Dwight D. Wilson a/k/a Beemon was convicted by a jury of Lauderdale County, Mississippi, for feloniously selling cocaine to Lawrence Vaughn, a Meridian Police Officer, in violation of Miss. Code Ann. § 41-29-139(a)(1) (Supp. 1991), and was sentenced by Circuit Judge Robert W. Bailey to twelve (12) years in the custody of the Mississippi Department of Corrections, and payment of a fine of $5,000.00.
Wilson appeals and assigns the following as error:
1. The trial court committed reversible error by improperly instructing the jury by giving instruction S-4;
2. The trial court erred in improperly admitting the hearsay statement of Agent Glen Knight in violation of M.R.E. 803(1);
3. The trial court erred in failing to grant Wilson's motion to quash the entire venire because of the prejudicial comments of venireman John Paul Carroll; and,
4. The trial court committed reversible error in failing to grant Wilson's motion for judgment notwithstanding the verdict and the jury's verdict was against the overwhelming weight of the evidence.
On May 18, 1988, Officers Lawrence Vaughn, Glenn Knight, Earl Pierce, Tommy Miller, and Earl Gardner, Agents of the Mississippi Bureau of Narcotics, met with Anthony Cole, a confidential informant to brief him for a drug buy in Meridian, Lauderdale County, Mississippi. Cole was working with the narcotics agents because there was pending against him at the time a charge of forgery. The plan was for Cole to drive Vaughn to people suspected of selling drugs and attempt to make a drug buy from them. On the list of names that was given to Cole was Dwight Wilson a/k/a Beemon.
Vaughn, who was to ride with Cole in Cole's car, was outfitted with a microphone and a transmitter. Knight and Pierce were to ride together as one surveillance team and Miller and Gardner were to ride together as the other. Cole drove Vaughn, followed by the surveillance teams, to the Victory Village Apartments where Beemon lived. They found that Beemon was not home and when they began to leave the area, they passed Beemon's car headed toward the apartment. Cole and Vaughn turned around and went back to the apartment where they met Beemon at the rear of the apartment complex.
Officer Vaughn's version of the ensuing events was that when Beemon arrived at the apartment complex, one Freddie Miller was in the automobile with him. Vaughn *995 and Cole pulled up beside Beemon and Miller, and Cole asked Beemon if he knew "where [they] could get a eight-ball of cocaine." Vaughn testified that Beemon then stepped back and told Miller to get the money. Vaughn then asked Beemon how much the cocaine would cost, and was told that the price was now $300.00 instead of $275.00. According to Vaughn he then gave Miller $300.00. Beemon left the automobile and went toward the apartment building. Miller, after receiving the money, left in the same direction. Several minutes later one Jerome Powe came from the same general direction that Beemon and Miller had taken, and approached the driver's side of the car with a rock of cocaine cupped in his left hand, which Vaughn took. Vaughn identified Beemon in his report as having a tatoo on his left shoulder blade.
The confidential informant Cole testified that after he and Vaughn arrived at the apartment, Vaughn asked Beemon if he knew where they could buy anything, and Beemon responded that he didn't know anybody who had anything, but if he knew anybody he would let him know. Beemon then walked away from the car toward his apartment to Cole's left. According to Cole, Jerome Powe then approached the car from Cole's right and came up to Vaughn's side of the car. Powe asked if they needed anything and Vaughn responded, "Yeah, we are looking to buy something." Powe then asked, "How much did you want to buy? How much did you want to spend?" Vaughn answered that he had $300.00 that he wanted to spend and Powe told Vaughn he could get an eight-ball for $300.00. Vaughn gave Powe the $300.00, and Powe returned in the direction from which he came. Powe returned later with the cocaine. Cole stated that Beemon was nowhere around while Vaughn talked with Powe. Cole testified that Vaughn stated that the conversation with Beemon was not a buy. After Powe returned with the cocaine, Vaughn described the transaction as a buy.
Officer Knight testified that he and Pierce followed Cole and Vaughn, but were parked two blocks from the transaction site. Knight was listening to the conversation from the body transmitter that Vaughn was wearing and he heard Vaughn and Cole decide to leave because Beemon was not there. Knight and Pierce followed Vaughn and Cole and turned around when Vaughn and Cole passed Beemon and headed back to the apartments. Knight could not see the transaction but could only hear it. The next thing he heard was the talking at the cars. At trial Knight was asked to say what he had heard. Beemon objected on the grounds of hearsay and the trial judge sustained the objection. The State argued that it was simply asking Knight what his senses observed. The trial judge took up the matter out of the presence of the jury and then informed counsel that he was proceeding under M.R.E. 803(1) and Peterson v. State, 518 So.2d 632 (Miss. 1987). The trial judge decided to review Peterson over night before giving his final ruling on the objection.
The following morning the trial judge took up the matter again out of the presence of the jury, and requested to hear the testimony to be offered. Knight stated that what he heard was Cole telling Beemon that he would like to get an eight-ball from him and that he heard the reply, "I can handle that." Beemon walked off and Miller walked up for the money. Beemon objected to Knight testifying to Beemon as saying "I can handle that" on the ground that it was hearsay because it was not perceived by Knight. The trial judge overruled the objection and let the jury hear the testimony because the statement met the criteria set out in Peterson.
On cross-examination, Knight admitted that he did not know who made the statement "I can handle that." Knight also testified that after Beemon began to walk off he heard Vaughn state, "Subject is walking toward the complex." Knight also said that he heard a statement later that Jerome Powe came from the other side of the complex with the cocaine. Knight indicated that Cole made a written statement of the transaction at the post-buy briefing, but he could not remember if he signed it.
*996 Beemon's version of the transaction was that he was at his father's house on the morning of May 18, and that he returned to his apartment in Victory Village to pick up some barbecue sauce. When he arrived, Cole and Vaughn pulled in beside him and Cole asked him if he knew where he could get an eight-ball. Beemon told Cole that he did not know of anything but would let him know if he found out something later. Beemon then left and went into the apartment for the barbecue sauce. He was in the apartment for fifteen to twenty minutes. When he came back to return to his father's house, Cole and Vaughn were gone. Beemon said that there was no one with him when he got back to the apartment and that he did not sell Vaughn or Cole any cocaine. He testified that he did not know either Freddie Miller or Jerome Powe. On cross-examination the State suggested that Beemon offered Cole $400.00 to "tell the story that he wanted him to tell."
Cole made a handwritten statement after the buy. Cole stated that the statement submitted at trial was not in his handwriting and not his statement. According to Cole, the facts in the statement were not true and he did not know it was false until he saw it in the office of Beemon's counsel. Cole, when asked about his written statement after his discovery of the false statement, did not mention it to the State. Later in the trial, Knight produced Cole's original handwritten statement. This statement contained Cole's signature. The original was identical to the copy except for the signature. Knight said that he had watched Cole write the statement and watched him sign it.
Cole was asked to describe how Beemon sold cocaine or if he assisted in the sale of any cocaine on May 18, and Cole stated that he could not because Beemon did not sell any cocaine. Cole also denied that Beemon offered him any money.
On cross-examination, Cole stated that he had gone to the office of Beemon's counsel four or five times and that he had talked about the case with Beemon once. Cole denied that he told Officer Miller that Beemon offered him $400.00 to testify for him. On rebuttal, Officer Miller stated that Cole told him that Beemon offered him $400.00 to testify, but that he did not take it. On redirect, Cole testified that Vaughn asked him to perjure himself and told him the story to tell. Vaughn on rebuttal, indicated that he did have a conversation with Cole and that Cole was expressing doubt, but that he instructed Cole to tell the truth and not to perjure himself.
After all the testimony was in the trial court began to accept instructions. Instruction S-4 was objected to by Beemon as being an abstract instruction without factual basis, not supporting the elements outlined in Model Jury Instruction No. 112.02, and did not meet the requirements of Malone v. State, 486 So.2d 360 (Miss. 1986). The trial court noted the objection but accepted the instruction. Beemon also offered instruction D-2A, which the trial court refused.
On the following day, the trial court gave the instructions to the jury and allowed final argument. After 55 minutes of deliberation the jury returned a verdict of guilty and on May 10, 1989, the trial court fined Beemon $5,000.00, ordered him to pay $100.00 restitution for laboratory fees and court costs, and sentenced him to twelve (12) years in the Mississippi Department of Corrections at Parchman.
On July 7, 1989, the trial court heard motions for judgment notwithstanding the verdict and for a new trial. Beemon argued in support of the motion for jnov that the conviction lacked sufficient proof that he committed the crime. In support of his motion for new trial, Beemon argued that the trial court erred in failing to convene a new venire after the remarks of John Paul Carroll, and that the jury was improperly instructed on the law of accessory before the fact. The trial court denied these motions. Beemon now appeals to this Court.

DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY GRANTING STATE'S 
INSTRUCTION S-4?
Jury instruction S-4 reads as follows:

*997 The Court instructs the Jury that an accessory before-the-fact is one who arranges for or counsels or commands another to commit a felony, but is not himself present when the felony is committed.
Every person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal and shall be indicted and punished as such; and this whether the principal had been previously convicted or not.
Therefore, should you find from the evidence in this case, beyond a reasonable doubt, that the Defendant, Dwight Wilson, a/k/a "Beemon", did willfully, unlawfully and feloniously and knowingly arrange for or counsel or command another to sell cocaine to Lawrence Vaughn on May 18, 1988 in Meridian, Lauderdale County, Mississippi, in exchange for three hundred dollars ($300) good and lawful currency of the United States, then it is your sworn duty to find the Defendant guilty of the sale of cocaine and find him guilty as charged under the indictment.
The major thrust of Beemon's contentions regarding Instruction S-4 is that the instruction assumes as fact that a sale of cocaine was committed by another person. S-4 does not inform the jury that before it can convict it has to find as a fact that the sale to Vaughn actually took place. Beemon argues that because of this failure, the jury assumed that all it had to determine was whether or not Beemon was an accessory, as the sale was already established.
It is familiar that jury instructions are reviewed as a whole and not individually. The general rule is that jury instructions must be supported by evidence and must provide that the jury must find each element of the crime under the proper standard of proof. Turner v. State, 573 So.2d 1340, 1343 (Miss. 1990); Cabana v. Bullock, 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986).
For a jury to convict as an accessory before the fact there must be evidence that the defendant "procures, counsels, or commands another to commit a felony for him, but is not himself present, actually or constructively, when the felony is committed." Sayles v. State, 552 So.2d 1383, 1389 (Miss. 1989). The jury is not permitted to simply assume that the felony was in fact committed. The jury must find beyond a reasonable doubt that the crime was committed and that the defendant counseled or commanded another to commit the crime. Ray v. State, 330 So.2d 580, 587 (Miss. 1976).
The prosecution takes the position that Beemon failed to preserve this issue for appeal and that the assigned error is not the objection that was made at trial. The objection by Beemon's attorney at trial is as follows:
BY MR. JACOB: The defendant objects to S-4 in that it's an abstract instruction without factual basis. It also does not support the elements as outlined in Model Jury Instruction No. 112.02. Further, it does not meet the elements of Malone versus State.

One of the elements of Model Jury Instruction 112.02 is that the jury must find from the evidence that the person who was counseled or commanded did in fact commit the felony. This mention of 112.02 is specific enough to preserve this issue for review, and is also reflective of the assignment asserted.
We again turn our attention to State's instruction S-4 and find that it is very similar to the instruction in Turner v. State, 573 So.2d at 1343 (Miss. 1990), which we found "... to pass the minimal threshold of advice to the jury that, before it could find [the defendant] guilty as an accessory before the fact, it also had to find the fact." The Turner instruction was primarily accepted because of two words "that occurred" which we accepted as meeting the "minimum threshold of advice to the jury." Those words are missing from Instruction S-4 in this case.
There is no indication in Instruction S-4, or in any of the instructions submitted to the jury that the jury was informed that they had to find that the crime was committed as well as finding that Beemon counseled or commanded the commission of the *998 crime. The jury was only instructed to determine whether Beemon was an accessory before the fact, leaving the jury to assume that the occurrence of the crime was an established fact. The jury must find each element of an offense and may not assume that the commission of the underlying crime has already been proven as an established fact. The jury must be convinced of both elements, not just one. Taken as a whole the instructions in this case did not properly instruct the jury to find beyond a reasonable doubt that the crime was actually committed.
Jury instruction S-4 was therefore inadequate and the conviction and sentence must be reversed and remanded for a new trial. Three other assignments were raised by Beemon which the Court finds to be without merit and as we must reverse the case on the first assignment of error, the other assignments will not be addressed.
REVERSED AND REMANDED FOR A NEW TRIAL.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, PITTMAN, BANKS and McRAE, JJ., concur.