749 So.2d 204 (1999)
Aaron BROWN, Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00058-COA.
Court of Appeals of Mississippi.
August 3, 1999.
*207 Andrew Edward Franz, Gulfport, Attorney for Appellant.
Office of the Attorney General by Scott Stuart, Attorney for Appellee.
EN BANC.
LEE, Judge, for the Court:
¶ 1. This is a direct appeal by Aaron Brown from convictions of aggravated assault and kidnapping in accordance with Mississippi Code Annotated sections 97-3-7(2)(a) and 97-3-53, as amended, respectively. Though Brown was indicted for arson as well, the jury found Brown not guilty of that charge. The appellant was sentenced to serve a term of life as an habitual offender pursuant to Mississippi Code Annotated section 99-19-83, as amended. We affirm the findings of the trial court.

STATEMENT OF THE FACTS
¶ 2. On the morning of September 9, 1996 Aaron Brown went to the apartment of Van Sykes. The door was unlocked and when he entered the apartment he found his fiancee there with Van Sykes. Sykes told Brown to leave and Brown refused. Sykes then struck him with a drawer and the two began to fight. At some point during the fight Brown struck Sykes with a fire extinguisher and something identified as shiny. Sykes was cut from his knee to his stomach and throat. This included his scrotum and penis. Sykes was then knocked unconscious, and he awoke in the back of a moving truck. Brown then dumped Sykes in a wooded area, started a fire in the back of the truck and left. Passersby saw Sykes lying in the woods and called for help. Sykes was hospitalized and required extensive surgery and medical treatment.

ISSUES

1. Should a mistrial have been granted based on a witness's statement that a bribe was offered in exchange for not testifying?
¶ 3. Brown argues that he was denied a fair trial because Connie Wright testified that someone telephoned her and offered to pay her $1,000 if she would not testify. He claims that the court could not repair the damage by instructing the jury to disregard the evidence and moved for a mistrial. The following colloquy appears in the record regarding this statement between the witness Wright and the district attorney, Ms. Dosdon:
Q: Have you talked to a gentleman by the name of Aaron Brown since this incident happened?
A: When we was staying at Willow Wood Apartment, he called my house saying something about he'll give me a $1,000
The defense then objected. The objection was sustained and an instruction given to the jury to disregard the witness's statement. The district attorney, Ms. Dodson, continued with her inquiry:
Q: All. Right. You said you got a telephone call. How did you know who the phone call was from?
A: I didn't really know who it was from. He just like, "I'll give you a $1,000 if you don't testify"
MR. FRANZ: Objection. Objection.
MS. DODSON: Wait, wait, wait. Wait.
THE COURT: I'll sustain the objection. I'll instruct the jury to disregard this witness's last remark. Ms. Wright, if you would, just try to answer the specific question that Ms. Dodson is asking.

*208 THE WITNESS: Yes, sir.
BY MS. DODSON:
Q: All right. I asked you if you had talked with Mr. Brown, and you told me you had. How do you know you were talking to Mr. Brown?
A: Okay. I don't really know if it was him I was talking to on the phone. I never did ask who it was. All I know, the phone run, I answered the phone, "Hello." "Is this Connie?"
Q: Wait a minute. Don't tell me what he said.
A: Okay.
Q: Let me ask you this: From what he said, could you tell who it was?
A: No, I could not.
Q: All right. Did he identify himself to you?
A: No, he did not.
At this point, defense counsel objected to the line of questioning. The objection was overruled and Ms. Dodson, the district attorney continued:
Q: Did anyone in the phone conversation make reference to Mr. Brown or to this incident?
A: What do you mean by that?
Q: Did they refer to him by name?
A: Oh, no, ma`am.
Q: Did they talk about this incident on September 9th of 1996?
A: You're talking about like during the phone call?
Q: Yes, ma'am.
A: They just told me that they'd give me $1,000
Q: Wait,
A. If I didn't testify against him
Q: wait, wait.
¶ 4. The court then instructed the jury to leave, and the defense moved for a mistrial. The State opposed the motion since it had approached the bench to address this matter and the court did not overrule when the defense objected at that time. Instead, it instructed the State to lay the foundation before asking questions, and the court would then rule on objections as they were made. The State also stressed that it was not trying to elicit the information regarding the bribe from the witness, but rather, that it was making an effort to establish the identity of the caller. The record shows that at the proceeding on the motion to reinstate bond that this witness testified that the person who called her identified himself as Aaron Brown and that he said that he would pay her if she "wouldn't testify against me." (emphasis added). Wright so testified both on direct and cross-examination. The State was making an effort to elicit the same testimony from Wright at the trial that she gave at the hearing to reinstate bond. The witness's testimony at trial regarding the identity of the caller was thus contradictory to that at the bond hearing. At the trial, while the jury was out, the court offered to allow Ms. Dodson to clarify for the record that the witness stated at the trial that she did not know who she was talking to on the phone. The defense, however, did not want to bring the matter to the further attention of the jury. Therefore, when the jury returned, it was simply instructed to disregard the statement made by the witness.
¶ 5. The question is whether the court, by instructing the jury to disregard Wright's statement, repaired the damage caused by the statement so that the motion for a mistrial was correctly overruled. "Whether to declare a mistrial is committed to the sound discretion of the trial court." Johnson v. State, 666 So.2d 784, 794 (Miss.1995) (citing Brent v. State, 632 So.2d 936, 941 (Miss.1994)). "The failure of the court to grant a motion for mistrial will not be overturned on appeal unless the trial court abused its discretion." Johnson, 666 So.2d at 794 (citing Bass v. State, 597 So.2d 182, 191 (Miss.1992)). In addition, the Mississippi Supreme Court has stated:
Elementary to all trial proceedings is the proposition that the occurrence of *209 any prejudicially incompetent matter or misconduct before a jury, the damaging effect of which cannot be removed by admonition or instructions, necessitates a mistrial. However, it is the well established rule in Mississippi that where a trial judge sustains an objection to testimony interposed by the defense in a criminal case and instructs the jury to disregard it, the remedial acts of the court are usually deemed sufficient to remove any prejudicial effect from the minds of the jurors. The jury is presumed to have followed the directions of the trial judge. Walker v. State, 671 So.2d 581, 621 (Miss.1995) (citations omitted).
¶ 6. This State's Supreme Court has repeatedly and consistently held that such action is sufficient to remove any prejudice resulting from the improper testimony. See Dennis v. State, 555 So.2d 679, 682-83 (Miss.1989) (finding improper speculative testimony non-prejudicial when trial court sustained objection and instructed jury to disregard it); Wright v. State, 540 So.2d 1, 4 (Miss.1989) ("Absent unusual circumstances, where objection is sustained to improper questioning or testimony, and the jury is admonished to disregard the question or testimony, we will not find error"); Marks v. State, 532 So.2d 976, 982 (Miss.1988) (finding refusal to grant mistrial was proper where trial court sustained objection and instructed jury to disregard improper testimony). Hoops v. State, 681 So.2d 521, 528 (Miss.1996).
¶ 7. Of course, if the inadmissible testimony is so damaging that its effect upon the jury could not be adequately tempered by admonition or instruction, the trial court should grant a mistrial. Reynolds, 585 So.2d at 755; Davis v. State, 530 So.2d 694, 697 (Miss.1988). However, each case must stand on its own facts in determining whether particular error constitutes reversible error. Henderson v. State, 403 So.2d 139, 140 (Miss.1981); Carleton v. State, 425 So.2d 1036, 1041 (Miss.1983). The Mississippi Supreme Court has held on various occasions that the trial court abused its discretion in not granting the defendant's request for a mistrial. In Barlow v. State, 233 So.2d 829, 831 (Miss.1970), this Court ruled that comments made by the district attorney during his cross-examination of the defendant, an elected Justice of the Peace being prosecuted for embezzlement, were prejudicial in nature to the extent that they constituted reversible error. The court reversed the conviction, stating: "[I]f the inadmissible testimony is so damaging that its effect upon the jury could not be adequately tempered by admonition or instruction; the trial court should grant a mistrial." Baine v. State, 604 So.2d 249, 257 (Miss. 1992) (citing Reynolds v. State, 585 So.2d 753, 755 (Miss.1991)); (Davis v. State, 530 So.2d 694, 697 (Miss.1988)).
¶ 8. In short, a violation of a rule of evidence should not result in the costly and time-consuming penalty of a new trial unless it affirmatively appears from the whole record that a miscarriage of justice has resulted. At most we find that this constitutes "harmless error." In Forrest v. State, 335 So.2d 900, 903 (Miss.1976), the supreme court opined, "[a]n error is harmless only when it is apparent on the face of the record that a fair minded jury could have arrived at no verdict other than that of guilty." (citations omitted). There was overwhelming evidence in this case to support that a fair minded jury could have arrived at no verdict other than to find Brown guilty of aggravated assault and kidnapping. In fact, Brown himself testified that he and Sykes fought for 45 minutes and that he knew he got the best of Sykes by looking at the blood that he shed during the fight. He also admitted carrying Sykes outside to the truck and changing his mind about taking him to the hospital because Brown had a felony conviction. To hold that Wright's testimony prejudiced Brown's case and requires a new trial would make a rule of evidence an end in itself.
*210 ¶ 9. We therefore find after close scrutiny of this case that any prejudicial effect caused by the reference to the bribe on Brown's right to a fair trial was cured by the trial judge's instruction to the jury to disregard the witness's statement. It is presumed that the jury followed these instructions, therefore the trial court did not err in refusing to grant the motion for mistrial.

2. Was evidence regarding prior convictions improperly admitted?
¶ 10. Relevance is the threshold requirement of the admissibility of any evidence; that is, only if it is relevant will it be admissible. M.R.E. 402. The inquiry does not, however, end there. Relevant evidence may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. M.R.E. 403. Thus, a trial court presented with a Rule 403 objection to relevant evidence must engage in a balancing process. The more probative the evidence is, the less likely it is that a 403 factor will be of sufficient consequence to substantially outweigh the probative value. On the other hand, the less probative value the evidence has, the less significant the 403 factor would have to be to justify exclusion. If one or more of the 403 considerations slightly outweigh probative value, the evidence still must be admitted. To tip the scale is not enough. The 403 factors must, in the language of the rule, "substantially outweigh" probative value before the evidence may be excluded. The trial court is afforded broad discretion in weighing these interests. United States v. Chalan, 812 F.2d 1302 (10th Cir.1987); Brumley Estate v. Iowa Beef Processors, Inc., 704 F.2d 1351 (5th Cir.1983). When the trial court determines that a 403 factor substantially outweighs probative value, it is still within its discretion to determine whether to exclude the evidence, since 403 states not that the evidence must be excluded in such cases, but rather that it may be excluded. Because of this discretion vested in the trial court, our task as an appellate court reviewing a 403 determination is not to engage anew in the 403 balancing process. Rather, we simply determine whether the trial court abused its discretion in weighing the factors and admitting or excluding the evidence. Turning our attention to the disputed testimony in the case at bar, we first must determine whether it meets that threshold requirement for admissibility, relevancy. Foster v. State, 508 So.2d 1111, 1117-18 (Miss. 1987).
¶ 11. Brown testified on direct examination that he changed his mind and did not take Sykes to the hospital because he panicked when he realized that he had a felony conviction. He also testified on direct, as an explanation for why he acted as he did, that he had experienced only two women in his life. In determining whether evidence regarding these matters should be admitted, the court found that Brown opened the door. It therefore allowed the State to ask Brown if he had a felony conviction. It also allowed the State to ask Brown how long he was in jail in order to explain why he had limited experience with women. Brown claims that the trial court erred in allowing the State to question him regarding these matters. The court, however, excluded testimony regarding the number of convictions and the nature of the crimes for which Brown was convicted.
¶ 12. The lower court found that since Brown testified on direct examination that he had little experience with women, it was appropriate to allow the State to ask when he went to prison, when he got out, and how long he stayed in jail in order to determine the facts surrounding his claim of inexperience with women. Also, since Brown testified on direct, as a defense to the kidnapping charge, that he did not take Sykes to the hospital as he had planned because his awareness of a previous felony conviction caused him to panic, *211 the court allowed the State to ask Brown if he had a felony conviction and how long he was in jail for the conviction.
¶ 13. We conclude that it was appropriate for the court to allow the State to ask Brown when he went to prison, when he got out, and how long he spent in jail in order to determine the facts surrounding his claim of inexperience with women; also, that the court did not abuse its discretion when it allowed the State to cross-examine Brown regarding his felony conviction since Brown used it as a defense to the kidnapping charge. We do not find that prejudice outweighed the probative value of this evidence in light of the fact that the court, in order to prevent Brown from being unduly prejudiced, properly excluded the presentation of evidence regarding the number of convictions and the nature of the crimes for which he was convicted. We therefore find no merit to this assignment of error.

3. Should the jury have been instructed to acquit of aggravated assault if it found that Brown acted in the heat of passion?
¶ 14. Brown argues that the lower court should have granted his requested instruction telling the jury to acquit him of the charge for aggravated assault if it found that he acted in the heat of passion. Brown asserts that aggravated assault should be treated as a lesser-included-offense to murder and that the instruction should have been granted pursuant to the statute for excusable homicide, section 97-3-17 of the Mississippi Code which states: "The killing of any human being by the act, procurement, or omission of another shall be excusable: ... (b) When committed by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation...." Miss.Code Ann. § 97-3-17 (Rev.1994). Heat of passion is an element of manslaughter, not aggravated assault, as set forth by statute. Section 97-3-35 of the Mississippi Code states: "The killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter." Miss.Code Ann. § 97-3-35 (Rev.1994). We fail to see where this statute provides that heat of passion is a defense that would not simply mitigate, but would actually excuse, or justify, aggravated assault so that Brown could be acquitted if the jury found that he so acted. According to section 97-3-7 of the Mississippi Code, simple assault and aggravated assault are defined as follows:
(1) A person is guilty of simple assault if he (a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or (b) negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or (c) attempts by physical menace to put another in fear of imminent serious bodily harm; ...
(2) A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; ...
Miss.Code Ann. § 97-3-7 (Supp.1994).
¶ 15. We find no authority supporting the argument that the jury should have been instructed to return a verdict of not guilty of aggravated assault if it found that Brown acted in the heat of passion. We find no merit to this issue since there is no legal authority for granting such an instruction. The failure to grant this instruction therefore did not constitute reversible error.

4. Should the jury have been instructed that consent was a defense to kidnapping?
*212 ¶ 16. The well settled law in this State is that jury instructions are not given unless there is an evidentiary basis for such in the record. Fairchild v. State, 459 So.2d 793 (Miss.1984); Wilson v. State, 592 So.2d 993, 997 (Miss.1991). Jury instructions should be given only if they are applicable to the facts developed in the case being tried. Lancaster v. State, 472 So.2d 363, 365 (Miss.1985) (citing Pittman v. State, 297 So.2d 888, 893 (Miss.1974)). In Perry v. State, 637 So.2d 871, 876 (Miss. 1994), the Mississippi Supreme Court stated "[o]ur law in Mississippi is well settled that jury instructions are not given unless there is an evidentiary basis in the record for such. Such instructions `must be warranted by the evidence.' Furthermore, they should not be indiscriminately granted."
¶ 17. Brown contends that he was entitled to a jury instruction stating that if the jury found that Sykes consented to the kidnapping that it was to return a finding of not guilty to the charge of kidnapping. He claims that Sykes was responsible for his own injured status and that Brown put Sykes in the back of the truck intending to take him to the hospital. Since Sykes needed to be hospitalized, Brown claims that Sykes constructively gave his consent for Brown to take him to the hospital.
¶ 18. The problem with this argument is that Brown did not take Sykes to the hospital. Instead, he dumped Sykes off the back of the truck in the woods, set a fire, and left the scene. This State's case law is clear that kidnapping is not a specific intent crime. That is, it is not necessary to establish the mental state of intent by direct evidence if the circumstances resulted in such a manner as to effect a kidnapping. Williams v. State, 544 So.2d 782, 790 (Miss.1987); Williams v. State, 445 So.2d 798, 809 (Miss.1984). Brown's intent to take Sykes to the hospital is therefore of no consequence in light of the subsequent events, and the issue of consent, being moot, need not be addressed. Hence, the failure to grant this jury instruction was not error.

5. Should evidence regarding Sykes's propensity to violence have been admitted?
¶ 19. The Mississippi Supreme Court applies the abuse of discretion standard in reviewing trial court on the admissibility of evidence. Harris v. State, 704 So.2d 1286, 1300 (Miss.1997). Thus, "relevancy and admissibility of evidence are largely within the discretion of the trial court and this court will reverse only where that discretion has been abused." Mack v. State, 650 So.2d 1289, 1313 (Miss. 1994), (citing Hentz v. State, 542 So.2d 914, 917 (Miss.1989)).
¶ 20. This State requires that there first be a showing that Brown acted in self-defense or that Sykes was the aggressor before proof of Sykes's bad reputation for violence could be admitted as competent evidence. Fornett v. State, 392 So.2d 1154, 1156 (Miss.1981); McDonald v. State, 538 So.2d 778, 779 (Miss.1989). Thus Sykes's propensity to fight would be relevant and admissible only if the identity of the aggressor or the provoker were in issue. Since the sequence of events and the facts are not disputed in this case, the identity of the aggressor is not an issue. Brown was a trespasser in Sykes's apartment. Sykes testified that he told Brown to leave and Brown failed to do so. Brown and Sykes both testified that Sykes threw the first blow to Brown with a drawer and the fight began. Injuries to Sykes required extensive surgery and hospitalization while Brown was able to return to work on the same day. With these facts it would be difficult to conclude that Sykes was the aggressor. The trial court was thus correct in excluding evidence of Sykes's reputation for violence since the defense did not establish a proper predicate for the introduction of such evidence. Fornett v. State, 392 So.2d 1154, 1156 (Miss.1981).

*213 6. Should evidence regarding a witness's juvenile record have been admitted for purposes of impeachment?

¶ 21. One witness who was in juvenile custody when she testified against Brown at a preliminary matter was released from custody the day after testifying. The defense argues that on cross-examination it should have been permitted to allow testimony regarding the witness's prior juvenile record as evidence of bias or motive to fabricate. The record shows that the defense questioned the witness at the trial as such:
Q: Ms. Wright, the last time you testified in a preliminary matter in this, you were wearing an orange suit; is that correct?
A: Yes, sir.
The State objected and both the State and the defense approached the bench. During the bench conference the following colloquy ensued:
MR. FRANZ (defense): I understand that she was released because she testified against Mr. Brown. She was out the next day.
THE COURT: But if she was in juvenile custody, nothing related to that can be gone into.
MR. FRANZ: I'll leave it alone, sir.
The bench conference then concluded and the defense proceeded to question the witness on other matters.
¶ 22. In such circumstances the defense was properly precluded from cross-examining the juvenile witness as to his juvenile record to call his character into question; however, the defense could have cross-examined the witness with reference to the juvenile record to probe only as necessary for special treatment, offers or concessions, or to show any bias or interest in testifying. Bass v. State, 597 So.2d 182, 188-89 (Miss.1992) (citing Davis v. Alaska, 415 U.S. 308, 311, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)); M.R.E. 609(d), comment. Though the defense in this case should have had the opportunity to confront the witness regarding her motivation to testify, for a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party. Terrain Enterprises, Inc. v. Mockbee, 654 So.2d 1122, 1131 (Miss.1995) (citing Hansen v. State, 592 So.2d 114 (Miss.1991)).
¶ 23. Close examination of the trial record shows that this witness's testimony was confined to matters that Brown himself admitted and did not place in issue. Wright testified that she saw a man wearing a hat throw Sykes in the bed of Sykes's truck, that Sykes was full of blood, and that she went to Sykes's apartment afterwards and saw broken glass and blood there. Her testimony regarding the telephone call was excluded, and the jury was instructed to disregard it. Brown himself testified that he and Sykes fought in Sykes's apartment in such a manner that they crashed through a neighbor's wall. He stated that the fight lasted about 45 minutes and that he grabbed the fire extinguisher and that they fought with fists and threw drawers. Brown admitted carrying Sykes outside to the truck and covering him with a sheet. He also admitted that he knew he got the best of Sykes by looking at the blood that he shed during the fight.
¶ 24. Since the witness's testimony did not contradict Brown's, we hold that the present error was harmless. We regard as nil the chances that, had the defense been permitted to cross-examine Wright with regard to having been released from custody following her testimony at the preliminary matter, that the jury would have returned any other verdict. Where error involves the admission or exclusion of evidence, we will not reverse unless the error adversely affects a substantial right of a party. Terrain Enters., 654 So.2d at 1131 (Miss.1995). Finding that the exclusion of this evidence did not adversely affect Brown's rights, we will not reverse on this issue.
*214 ¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF COUNT I AGGRAVATED ASSAULT, AND SENTENCE OF LIFE IMPRISONMENT; COUNT II KIDNAPPING, AND SENTENCE OF LIFE IMPRISONMENT WITH SENTENCES TO RUN CONCURRENTLY WITH ONE ANOTHER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
BRIDGES, DIAZ, MOORE, PAYNE, AND THOMAS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.
McMILLIN, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING AND SOUTHWICK, P.JJ.
McMILLIN, C.J., dissenting:
¶ 26. I respectfully dissent. In my view, the persistent efforts of the prosecuting attorney to pursue evidence that Brown may have, by telephone, offered a bribe to a potential witness against him in the face of a direct statement by the witness that she could not identify the caller was so prejudicial to a fair trial that it could not be cured by an admonition to disregard the evidence. I will concede that the State was probably surprised by this witness's refusal on the stand to identify Brown as the caller, since the witness had apparently named Brown as the person alleged to have offered her money not to testify in an earlier interview. Nevertheless, once the witness, from the stand, indicated that she did not know who had called her, it was incumbent upon the State to immediately abandon the inquiry to minimize any damage already inadvertently inflicted. Much to the contrary, the prosecuting attorney repeatedly pursued the same inquiry. By making essentially the same inquiry time after time, in the apparent hope of eliciting a different response from the witness, the State created a situation where inadmissible evidence of possible witness bribery was repeatedly put before the jury.
¶ 27. Though such matters are initially left to the sound discretion of the trial court (see, e.g. Evans v. State, 725 So.2d 613 (¶ 114) (Miss.1997)), I would hold that, in this case, the evidence was so fundamentally prejudicial and was so emphasized by the persistence of the prosecutor that its prejudicial effect was beyond repair.
¶ 28. Evidence of post-indictment attempts to affect a witness's testimony are admissible as showing consciousness of guilt. People v. Jacaruso, 244 A.D.2d 503, 664 N.Y.S.2d 109, 109 (1997) (involving threats to a witness during a recess). However, in order to be admissible, it must be shown that the actions were attributable to or authorized by the defendant. Rozier v. State, 636 So.2d 1386, 1388-89 (Fla.Dist.Ct.App.1994). In the Rozier case, the Florida court reversed a conviction based on the improper admission of evidence that the defendant's brother may have threatened a witness. Id. at 1389. The court concluded that the evidence created an impermissible "risk that Defendant was convicted based on his apparent bad character instead of evidence that he committed the armed robbery...." Id.
¶ 29. In State v. Hicks, 535 S.W.2d 308 (Mo.Ct.App.1976), the court reversed a conviction because the prosecution had made reference in opening statements to alleged threats against a witness and had questioned that witness about telephonic threats, even though the State was unable to link the alleged telephone call to the defendant. Id. at 309-10. The trial court instructed the jury to disregard this information, but the appellate court found the evidence so prejudicial as to require a reversal, saying:
All who have been subjected, willingly or unwillingly, to explanations of a jury's reasoning after the fact, realize how difficult *215 it is for the trial court, by a ruling or explanation, to erase from the memories of the jurors the evil of illegitimate statements and inadmissible evidence, or to assuage a jury's combined impression that it is being deprived of evidence it should know about on a mere technicality of the law.
Id. at 313.
¶ 30. I can draw no legitimate distinction between a threat and an offer of a bribe in terms of the prejudicial impact such information would necessarily have on a jury's deliberations. This inadmissible information received such emphasis in this trial that I think the damage was fatal.
KING AND SOUTHWICK, P.JJ., JOIN THIS SEPARATE WRITTEN OPINION.